IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANE DOES 1-13 AND 15-17; ) <br> JOHN DOE 1; and ) <br> JOHN DOE 2, individually and as ) <br> parent and next friend of Jane Doe 14, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v.                                                          ) <br>  ) <br> MOUNT SAINT MARY HIGH SCHOOL ) <br> CORPORATION OF THE STATE OF ) <br> OKLAHOMA, an Oklahoma corporation; ) <br> THE BOARD OF TRUSTEES OF ) <br> MOUNT SAINT MARY HIGH SCHOOL, ) <br> an unincorporated association; ) <br> ROMAN CATHOLIC ARCHDIOCESE ) <br> OF OKLAHOMA CITY, ) <br> an unincorporated association; and ) <br> SISTERS OF MERCY OF THE ) <br> AMERICAS SOUTH CENTRAL ) <br> COMMUNITY, INC., ) <br>  ) <br> Defendants ) | No. CIV-22-992-R |

## ORDER

Pending before the Court are: (1) the Motion to Dismiss [Doc. No. 9] filed by Defendants Mount Saint Mary Corporation and the Board of Trustees of Mount Saint Mary High School; (2) the Motion to Dismiss [Doc. No. 11] filed by the Roman Catholic Archdiocese of Oklahoma City; and (3) the Motion to Dismiss [Doc. No. 10] filed by the Sisters of Mercy of the Americas South Central Community, Inc. Each motion is fully briefed [Doc. Nos. 20, 21, 22, 24, 25, 26] and at issue.

I.   **Introduction**

Plaintiffs in this action are students and the parents of students that attended Mount Saint Mary High School, a private high school in Oklahoma City. Plaintiffs allege that the students experienced sexual assault and pervasive sexual harassment while attending Mount Saint Mary and Defendants not only failed to take reasonable actions in response, but actually fostered an environment that discriminates against women. Defendants include Mount Saint Mary High School ("MSM"), the Board of Trustees of MSM, the Roman Catholic Archdiocese of Oklahoma City, and the Sisters of Mercy of the Americas South Central Community, Inc.

Plaintiffs assert claims for breach of contract, negligence, intentional infliction of emotional distress, public nuisance, and violations of Title IX of the Education Amendments of 1972.[1] The Parent Plaintiffs also assert a claim for loss of child's consortium. MSM moves for dismissal of these claims, contending that some of the Title IX and tort claims are barred by the statute of limitations and the contract, public nuisance, and loss of consortium claims fail as a matter of law. The Archdiocese and the Sisters of Mercy join in these arguments and additionally contend that Plaintiffs have failed to state plausible claims against them. The Board of Trustees of MSM argues it must be dismissed because it is not an entity capable of being sued.

---

[1] Jane Doe 9 also asserts a claim of slander against MSM.

## II. Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" to state a plausible claim, although it does require "more than labels and conclusions." *Twombly*, 550 U.S. at 555. All well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

## III. Discussion

### A. The Board of Trustees of Mount Saint Mary High School

The Board argues it is not a separate entity from the school and is therefore not capable of being sued. Plaintiffs assert that the Board is an unincorporated association which may be sued under Oklahoma law.

Federal Rule of Civil Procedure 17(b)(3) provides that a defendant's capacity to sue or be sued is determined "by the law of the state where the court is located," here, Oklahoma. Under Oklahoma law, "any person, corporation, partnership, or unincorporated association shall have capacity to sue or be sued in this state." Okla. Stat. tit. 12, § 2017(B). However, as the Board notes, the statutory provision providing for service of process against unincorporated associations provides that "[w]hen any two or more persons associate themselves together and transact business for gain or speculation under a

3

particular appellation, not being incorporated, they may be sued by such appellation without naming the individuals composing such association. . . ." *Id.* at § 182. The Amended Petition [Doc. No. 1-1] describes the Board as an unincorporated association that is responsible for enforcing school policy at MSM, but does not allege that it operates for any business gain or speculation. Am. Pet. ¶ 2.

Further, other district courts applying Oklahoma law have found that a board of directors or trustees is not an entity separate from the corporation and is therefore not subject to suit in its own name. *Hopkins v. Bacone Coll.*, No. CIV-16-166-SPS, 2016 WL 6604357, at *2 (E.D. Okla. Nov. 8, 2016) (board of trustees of non-profit educational corporation); *Team Sys. Int'l, LLC v. Haozous*, No. CIV-14-1018-D, 2015 WL 2131479, at *2 (W.D. Okla. May 7, 2015), aff'd, 656 F. App'x 907 (10th Cir. 2016) (corporate board of directors); *Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty. Okla.*, 954 F. Supp. 2d 1292, 1294 (N.D. Okla. 2012) (school board for public school district). The Court concurs with Defendant Board that the facts as alleged in the Amended Petition do not support the finding that the Board is an unincorporated association subject to suit separate from MSM. Accordingly, asserting claims against the Board is duplicative of suit against the school and the Board is therefore dismissed without prejudice.

### B. The Archdiocese and Sisters of Mercy

The Archdiocese and Sisters of Mercy argue they may not be held vicariously liable for the conduct of MSM because they are distinct corporate entities and, alternatively, that Plaintiffs have failed to state plausible claims. The Court does not interpret Plaintiffs' allegations at this juncture as relying on vicarious liability or the need to pierce the

4

corporate veil. However, the Court does agree that Plaintiffs have failed to state plausible claims against the Archdiocese and Sisters of Mercy.

The Amended Petition alleges that, on information and belief, the Archdiocese and Sisters of Mercy are responsible for supervising MSM and enforcing school policy, that they had notice of rampant sexual abuse occurring at the school, and that they did nothing to ensure that the school kept students safe. Am. Pet. ¶¶ 1-4, 12, 39. Notably absent from the Amended Petition, however, are any allegations providing a factual basis for Plaintiffs' belief that these Defendants have supervisory authority over MSM or the ability to enforce policies at MSM. *See Horocofsky v. City of Lawrence*, No. 20-2529-EFM, 2022 WL 1421554, at *17 (D. Kan. May 5, 2022) ("Certainly, pleading 'upon information and belief' is acceptable as long as the complaint contains the factual basis for the belief.") (quotation omitted). Although Plaintiffs allege that "MSM claims to 'follow[] Archdiocesan policy with regard to matters related to sexual harassment,'" Am. Pet. ¶ 52, there are no facts indicating that the Archdiocese or Sisters of Mercy have the ability to enforce these policies at MSM.

Plaintiffs' other allegations against these parties are also conclusory and devoid of a factual basis. They allege that the Archdiocese and Sisters of Mercy "allowed MSM to breach its contract with the Plaintiffs," Am. Pet.¶ 240, but do not include any facts showing that the Archdiocese or Sisters of Mercy formed a contract with Plaintiffs. Plaintiffs go on to allege that the Archdiocese and Sisters of Mercy "participated" in MSM's breach of its duty to provide a safe educational environment but do not say how they participated, other than to reassert their belief that these entities failed to supervise MSM. *Id.* at ¶¶ 247-249.

Similarly, the Archdiocese and the Sisters of Mercy allegedly "allowed, condoned, or participated in MSM's Title IX violations," *id*. at ¶ 267, but there are no facts describing their participation beyond their purported supervision of MSM. In short, there are no non-conclusory allegations specific to the Archdiocese or Sisters of Mercy that raise a right to relief above the speculative level.

Accordingly, Plaintiffs have failed to state a claim against the Archdiocese or the Sisters of Mercy and these defendants are dismissed without prejudice.

### C. Mount Saint Mary High School

#### 1. Title IX, Negligence, and Intentional Infliction of Emotional Distress Claims

MSM argues that the Title IX claims brought by Jane Does 3, 5, 8, 10, 11, and 15 and the negligence/intentional infliction of emotional distress claims brought by Jane Does 3, 4, 5, 8, 10, 11, 15, and 16[2] are barred by the two-year statute of limitations.[3] Plaintiffs do not dispute that the claims are governed by a two-year statute of limitations but argue that the limitations period should be tolled because they did not discover the causal link between their injuries and MSM's wrongdoing until late 2021.

---

[2] Jane Does 4 and 16 do not assert an intentional infliction of emotional distress claim.

[3] The statute of limitations is an affirmative defense, which "may be resolved on a Rule 12(b)(6) motion to dismiss, 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Cosgrove v. Kansas Dept. of Social and Rehabilitative Services*, 332 F. App'x 463, 465 (10th Cir. 2009) (quoting *Aldrich v. McCullough Props, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980)).

With respect to Plaintiffs' federal claims, federal law controls when the cause of action accrued. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1215 (10th Cir. 2014). "In general, under the federal discovery rule, claims accrue and the statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004) (internal quotation marks and brackets omitted). Importantly, "a plaintiff need not have conclusive evidence of the cause of an injury in order to trigger the statute of limitations." *Id.* Instead, the focus is "whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm." *Id.* Oklahoma law sets forth a similar rule: although a cause of action typically "accrues when a litigant first could have maintained his action to a successful conclusion," *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 746 (Okla. 2021), the "discovery rule tolls the statute of limitations until an injured party knows of, or in the exercise of reasonable diligence, should have known of or discovered the injury, and resulting cause of action." *Lovelace v. Keohane,* 831 P.2d 624, 629 (Okla. 1992).

Plaintiffs emphasize that their Title IX and tort claims are not against the specific individuals that harassed or assaulted them – events they plainly had knowledge of at the time of occurrence – but against MSM for its own role in causing their injuries. And, Plaintiffs argue, they did not know of MSM's misconduct until years later because MSM intentionally concealed its wrongdoing and engaged in a cover up. This argument is belied by Plaintiffs' own allegations which show that MSM's role in fostering a discriminatory

environment and its alleged indifference to reports of sexual harassment were known to each individual Plaintiff at least by the time they graduated or left the school.

To begin, the allegations indicate that Jane Does 3, 4, 5, 8, 10, 11, 15, and 16 were aware of their respective abusers' identities and the abuser's continued attendance or employment at the school after they reported the harassment. They were also aware that MSM's response to their specific report of abuse or harassment was inadequate. Am. Pet. ¶¶ 111-120, 126-129, 147-153, 168-175, 181-183, 207-212. "[T]hese circumstances put plaintiffs on at least inquiry notice as to administrators' knowledge of and indifference to other abuse." *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 9–10 (2d Cir. 2014); *see also King-White v. Humble Indep. Sch. Dist.,* 803 F.3d 754, 763 (5th Cir. 2015) ("While they may not have known about complaints from other parents or certain alleged HISD 'policies,' a reasonable person who knew that her daughter was living with a teacher, and who had already lodged complaints with administrators that had gone unheeded, would have investigated further.").

Further, several of the allegedly discriminatory acts by MSM were public in nature, such as requiring girls to attend assemblies on morality, imposing differing dress codes, allowing boys to harass girls at sporting events, permitting a student to repeatedly engage in lewd sexual acts at football games, tolerating discriminatory behavior by sports coaches, and settling a 2011 lawsuit alleging that MSM failed to warn female students of a dangerous student with a predilection for inappropriate sexual behavior. Am. Pet. ¶¶ 57-58, 62, 67, 67-70, 75, 126-130, 167-170. Plaintiffs also allege that it was "well known in

the MSM community" that MSM failed to take disciplinary action after certain boys assaulted, raped, or harassed girls. Am. Pet. ¶¶ 65-66.

Based on these allegations, Plaintiffs had substantial knowledge of MSM's promotion of a hostile environment and indifference to reports of sexual harassment.[4] Even if MSM intentionally concealed certain reports of abuse or prevented Plaintiffs from learning the full extent of harassment taking place on campus, the specific Plaintiffs involved here knew of facts that would put a reasonable person on notice that MSM – by fostering a discriminatory environment, tolerating well known or public acts of harassment, and failing to appropriately respond to each Plaintiff's specific report of abuse – engaged in conduct that may have caused their injury. *See Johnson v. Gary E. Miller Canadian Cnty. Children's Juv. Just. Ctr.,* No. CIV-09-533-L, 2010 WL 152138, at *2 (W.D. Okla. Jan. 14, 2010) (holding that Title IX claims based on student's sexual relationship with teacher, school's failure to make an appropriate system of review of sexual abuse allegations, and school's creation of an abusive school environment "had to have accrued at the time [the plaintiff] was a student"). These Plaintiffs therefore knew or should have known they had potential tort and Title IX claims against MSM at least by the time they left the school.

---

[4] Moreover, some Plaintiffs specifically allege they had actual knowledge of MSM's deficient institutional response to reports of sexual harassment at the time they reported their own abuse. Am. Pet. at ¶ 113 ("Jane Doe 3…felt ashamed and embarrassed…based largely on the culture MSM had created, and how it had reacted to the reports of other survivors of which Jane Doe 3 was aware"); ¶ 212 ("It was clear to Jane Doe 15 and Jane Doe 16 that DeNigri and MSM would protect the perpetrator, rather than protect Jane Doe 15").

Accordingly, the Title IX claims brought by Jane Does 3, 5, 8, 10, 11, and 15 and the negligence/intentional infliction of emotional distress claims brought by Jane Does 3, 4, 5, 8, 10, 11, 15, and 16 are untimely and these claims are dismissed without prejudice.

### 2. Breach of Contract Claims

MSM next argues that Plaintiffs' breach of contract claim fails as a matter of law because there is no contract between the parties. The contract claim is premised on the MSM student handbook, which Plaintiffs describe as making a number of promises to students, including that MSM "will investigate any and all complaints" of sexual harassment and MSM "will impose disciplinary action it deems appropriate" for violations of its harassment policy. Am. Pet. ¶¶ 47-48.

To succeed on their contract claim, Plaintiffs must show formation of a contract and breach of the contract. *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748 (Okla. 2021). Oklahoma courts have suggested, though not explicitly held, that a university student handbook "may form the basis of a legally cognizable contractual relationship between the institution and its students." *Bittle v. Okla. City Univ.*, 6 P.3d 509, 514 (Okla. Civ. App. 2000); *see also Mason v. State ex rel. Bd. of Regents of Univ. of Oklahoma,* 23 P.3d 964, 970 (Okla. Civ. App. 2001) (assuming that student code created an implied contract between student and university). However, to proceed on such a claim, the pleadings must point to "some specific, identifiable agreement for an educational institution's provision of particular services to its students and an arguable breach of that specific agreement[.]" *Id.*; *see also Russell v. Bd. of Cnty. Comm'rs, Carter Cnty.,* 952 P.2d 492, 502 (Okla. 1997) ("Although the existence of an implied contract generally presents

an issue of fact, if the alleged promises are nothing more than vague assurances the issue can be decided as a matter of law.").

Plaintiffs' allegations fall short of this requirement. The statements they identify from the student handbook are broad, policy driven statements concerning MSM's general approach and expectations of students and staff. Although Plaintiffs have alleged that students must sign the handbook and that it forms a contract, they have not identified any specific contractual terms showing that MSM promised to provide a particular service, take a particular action, or enforce violations in a particular manner. Accordingly, Plaintiffs' have not plausibly alleged that MSM intended to form a contract with its students via the student handbook. *See Gokool v. Oklahoma City Univ.*, No. CIV-16-807-R, 2016 WL 10520949, at *4 (W.D. Okla. Dec. 29, 2016), *aff'd*, 716 F. App'x 815 (10th Cir. 2017). Plaintiffs have also failed to any allege any facts suggesting that imposing tort liability for breach of the implied duty to deal fairly and in good faith would be appropriate in this situation. *See Embry v. Innovative Aftermarket Sys. L.P.,* 247 P.3d 1158, 1160 (Okla. 2010).

Accordingly, Plaintiffs' breach of contract and tortious breach of contract claims are dismissed without prejudice.

### 3. Public Nuisance

MSM next moves to dismiss Plaintiff's public nuisance claim. Oklahoma law defines a nuisance as an act or omission that "[a]nnoys, injures or endangers the comfort, repose, health, or safety of others; …[o]ffends decency; or…renders other persons insecure in life, or in the use of property." Okla. Stat. tit. 50, § 1. In applying this definition,

Oklahoma courts have consistently "limited Oklahoma public nuisance liability to defendants (1) committing crimes constituting a nuisance, or (2) causing physical injury to property or participating in an offensive activity that rendered the property uninhabitable." *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 724 (Okla. 2021). Further, a public nuisance "involves a violation of a public right." *Id.* at 726. A public right is not merely "an aggregate of private rights by a large number of injured people" but rather "is a right to a public good, such as an indivisible resource shared by the public at large, like air, water, or public rights-of-way." *Id.* (quotation marks and citation omitted).

Plaintiffs' allegation that MSM created a rape culture and a dangerous environment do not fall within these parameters. Although MSM allegedly tolerated (if not promoted) rampant sexual harassment on campus, Plaintiffs have not alleged any interference with a public right or shown that Defendants' conduct rendered any property uninhabitable or was criminal in nature. Accordingly, Plaintiffs have failed to state a plausible claim for public nuisance under Oklahoma law and these claims are dismissed without prejudice.

### 4. Loss of Consortium

Last, MSM argues that the Parent Plaintiffs' claims for loss of filial consortium fail because Oklahoma does not provide for this type of damage. Although Oklahoma law specifically recognizes a parent's right to recover damages for loss of consortium following the death of a minor child, Okla. Stat. tit. 12, § 1055, Plaintiffs have pointed to no binding authority recognizing a right to recover for loss of consortium following personal injury to a minor child. Instead, Plaintiffs rely on *Williams v. Hook*, 804 P.2d 1131, 1136 (Okla. 1990), in which the Oklahoma Supreme Court held that minor children could maintain a

cause of action for loss of parental consortium when a parent is negligently injured. In *Williams*, 804 P.3d at 1136, the Oklahoma Supreme Court reasoned that there was little distinction "between allowing children to recover for the loss of consortium a child suffers through the actual death of a parent under [the wrongful death statute] and refusing to allow recovery for the loss of consortium when for all practical purposes the parent is in a state which equates death." *Williams* thus held that "a cause of action for the permanent loss of parental consortium resulting from injuries tortiously inflicted on their parent by a third person should be allowed to children under Oklahoma law." *Id.* at 1138.

Plaintiffs argue that *Williams'* rationale supports recognition of a parent's cause of action for loss of consortium when a child is injured. However, even accepting that premise, the Court is not persuaded that such a claim is viable in this action. *Williams* involved the "permanent loss of parental consortium" and based its reasoning at least in part on the reality of dealing with "a severely injured parent." *Id.* at 1136. And the Oklahoma Supreme Court has subsequently described *Williams* as extending a loss of consortium claim "to children of a totally disabled parent." *Shull v. Reid*, 258 P.3d 521, 525 n.6 (Okla. 2011). The allegations in this action do not involve the death of a child or injuries resulting in total disability or a permanent loss of child consortium.

Accordingly, the Parent Plaintiffs have failed to state a plausible loss of consortium claim and those claims are dismissed without prejudice.

### IV.   Conclusion

As outlined above, the motions to dismiss filed by the Archdiocese, Sisters of Mercy, and Mount Saint Mary [Doc. Nos. 9, 10, 11] are GRANTED. In their response

13

briefs, Plaintiffs request leave to amend should the Court conclude they have not sufficiently alleged facts to maintain their claims. Plaintiffs may seek leave to amend in accordance with Federal Rule of Civil Procedure 15 and the relevant Local Rules.

IT IS SO ORDERED this 21st day of August 2023.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE