IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JANE DOE 1, *et al.*,                           )
                                                )
          Plaintiffs,                           )        Case No: 5:22-cv-00992-R
                                                )
v.                                              )
                                                )
MOUNT SAINT MARY HIGH SCHOOL    )        Jury Trial Demanded
CORPORATION OF THE STATE OF     )        Attorney's Lien Claimed
OKLAHOMA, *et al.*,                             )
                                                )
          Defendants.                           )

**PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS
MOUNT SAINT MARY, TALITA DENEGRI, AND THE ARCHDIOCESE OF
OKLAHOMA CITY'S MOTIONS TO COMPEL**

**Respectfully submitted,**

/s/ Rachel L. Bussett
Rachel L. Bussett, OBA No. 22181
Bussett Legal Group, PLLC
PO Box 851804
Yukon, OK 73085
Telephone: (405) 605-8073
rachel@bussettlegal.com

Laura E. Reasons
Reasons Employment Law
332 South Michigan Avenue, Suite 121, No. 5391
Chicago, IL 60604
Telephone: (312) 545-9216
laura@reasonsemploymentlaw.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

PLAINTIFFS' COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS MOUNT SAINT MARY, TALITA DENEGRI, AND THE ARCHDIOCESE OF OKLAHOMA CITY'S MOTIONS TO COMPEL ......................................................................................... i

TABLE OF CONTENTS ................................................................................................. i

TABLE OF  AUTHORITIES ......................................................................................... ii

    INTRODUCTION ..................................................................................................... 1

        A.   Chronology of  Recent Events ..................................................................... 4

        B.   The Duplicative Discovery Burden ............................................................ 10

        C.   Examples of Word-for-Word Duplication ................................................. 11

        C. Extensive Meet and Confer Efforts ............................................................ 12

        D. Plaintiffs Have Not Failed to Respond ....................................................... 12

        E. Defendants' Own Discovery Failures .......................................................... 13

    LEGAL STANDARD ................................................................................................ 13

    ARGUMENT AND AUTHORITY ............................................................................ 14

        I. PLAINTIFFS HAVE NOT FAILED TO RESPOND TO DISCOVERY .......................... 14

        II. THE DISCOVERY VIOLATES RULE 26(b)(2)(C) AS UNREASONABLY CUMULATIVE AND DUPLICATIVE ................................................................. 15

        III. THE DISCOVERY FAILS RULE 26(b)(1) PROPORTIONALITY ANALYSIS ........ 17

        IV. THE DUPLICATIVE DISCOVERY IS VEXATIOUS AND OBSTRUCTS ACCESS TO JUSTICE .......................................................................................................... 18

        V. DEFENDANTS' OWN DISCOVERY FAILURES DEMONSTRATE BAD FAITH .. 20

        VI. TENTH CIRCUIT PRECEDENT REQUIRES COORDINATION IN MULTI-DEFENDANT CASES .......................................................................................... 20

        VII. DEFENDANTS HAVE WAIVED THEIR RIGHT TO COMPEL BY FAILING TO MEANINGFULLY MEET AND CONFER ........................................................ 21

        VIII. DEFENDANTS REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED .... 22

    CONCLUSION .......................................................................................................... 23

**TABLE OF  AUTHORITIES**

**Cases**

Cache La Poudre Feeds, Ltd. Liab. Co. v. Land O'Lakes, Inc., 438 F. Supp. 2d 1288 (D. Colo. 2006) .................................................................................................................... 21

Cardenas v. Dorel Juvenile Grp., Inc., 2009 U.S. Dist. LEXIS 119756, at *8 (D. Colo. Dec. 22, 2009) .................................................................................................................... 21

Daval Steel Prods. v. M.V. Jayakrishna, 106 F.R.D. 137, 139 (S.D.N.Y. 1985), ........................ 20

*Doe v. Taos Mun. Sch*., No. 1:20-cv-01041-SCY-JHR, 2024 U.S. Dist. LEXIS 176359, at *4 (D.N.M. Sep. 27, 2024)................................................................................................. 22

Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 330 (3d Cir. 2007)............................ 20

Lone Star Steel Co. v. United Mine Workers of Am., 851 F.2d 1239, 1244 (10th Cir. 1988...... 13

*Maese v. Lamey (In re Lamey)*, Nos. 14-13729 ta7, 15-1030 t, 2015 Bankr. LEXIS 3710, at *12 (Bankr. D.N.M. Oct. 30, 2015) .................................................................................... 23

Mancia v. Mayflower Textile Servs. Co., 253 F.R.D. 354, 357 (D. Md. 2008), ......................... 15

Royalty Petroleum Co. v. Arkla, Inc., 129 F.R.D. 674 (W.D. Okla. 1990),................................. 18

Salazar v. McDonald's Corp., 2016 U.S. Dist. LEXIS 14823, at *15 (D. Ill. Feb. 8, 2016) ........ 17

Simpson v. Univ. of Colo., 220 F.R.D. 354, 359-60 (D. Colo. 2004 ..................................... 14, 15

Vance v. Berry Plastics Corp., No. 4:14-cv-00746, 2016 U.S. Dist. LEXIS 131406, at *7-8 (E.D. Ark. Sept. 26, 2016).......................................................................................................... 21

**Rules**

Fed. R. Civ. P. 26.............................................................................................................. passim

Fed. R. Civ. P. 33................................................................................................................... 16

Fed. R.Civ.Pro. 36.................................................................................................................. 23

Fed.R.Civ.P. 37................................................................................................................ passim

Local Rule 37.1 ............................................................................................................... 14, 21

Plaintiffs respectfully submit this Combined Response in Opposition to the Motions to Compel filed by Defendant Roman Catholic Archdiocese of Oklahoma City (Dkt. 114) and Defendants Mount Saint Mary High School Corporation of the State of Oklahoma and Talita DeNegri (Dkt. 113).

## INTRODUCTION

This case involves sixteen plaintiffs—ten of whom are survivors of sexual assault or harassment by Mount Saint Mary High School students, coaches, and/or teachers (the "Student Plaintiffs"), and the remaining six who are their parents (the "Parent Plaintiffs"). The Student Plaintiffs reported their abuse at different times and MSM failed to protect them. In this case they are now facing an unprecedented discovery burden created by four defendants who have collectively served over 2,300 separate discovery requests, the significant majority of which are duplicative or nearly identical. This burden on the Plaintiffs is further exacerbated by these Motions to Compel filed by the Roman Catholic Archdiocese of Oklahoma City ("Archdiocese") (Dkt. 114), and Mount Saint Mary High School of the State of Oklahoma ("Mount Saint Mary") (Dkt. 115). Each Student Plaintiff faces approximately 150-200 requests, while each Parent Plaintiff faces approximately 100 requests, despite the fact that the vast majority seek identical information regardless of which defendant propounds them.

Following the April 30, 2025 Scheduling Conference (see Dkt. 104), where the Court ordered mediation to be completed by September 30, 2025 (Dkt. 105), Plaintiffs have repeatedly attempted to work cooperatively with Defendants toward streamlined and efficient discovery (*see* Exhibit 1). Specifically, Plaintiffs' Counsel have proposed the use

1

of Plaintiff fact sheets, joint discovery requests, and coordinated responses—all rejected by Defendants.  In several instances, Defendants have initially feigned interested in Plaintiffs' proposals, only to later refuse cooperation, after Plaintiffs spent time developing the proposals.

Despite multiple communications about the voluminous and duplicative nature of the defense discovery requests, Defendants deny the duplicative nature of the discovery and ignore the burden placed on counsel by stating that Plaintiffs can refer back to previous answers. This purported solution ignores Plaintiffs' ongoing duty to supplement and amend responses after discovery of additional information.  The effect is to create a situation where Plaintiffs are so focused on responding to the duplicative discovery propounded by Defendants, that they cannot move forward with developing their own case against the Defendants. After months of Plaintiffs' good faith conferral met with Defendants' intransigence, judicial intervention is necessary.

Plaintiffs have fully responded to all Requests for Admissions despite their duplication and served the same. Plaintiffs have fully responded to all interrogatories and request for production served by Defendant Sisters of Mercy, who first served their discovery requests. Simultaneously therewith, Plaintiffs attempted to resolve the issue of duplicative discovery with Defendants Mount Saint Mary and the Archdiocese of Oklahoma City.  Defendants refused to work in good faith with Plaintiffs to resolve this issue and instead, waited until the day before Christmas Eve, to file their Motions to Compel despite the clear duplication in the requests. Defendants have agreed that Plaintiffs have not taken the position that they will withhold documents, and their proposed solution

2

is for Plaintiffs to simply refer back to the prior answers submitted. However, this "solution" ignores a party's true discovery obligations and the enormous burden that responding to over 3,200 requests in the fashion would place on the Plaintiffs.

Defendants' motions mischaracterize Plaintiffs' position and ignore months of good faith meet and confer efforts to resolve systematic discovery abuse. Plaintiffs have not refused to provide discovery. Rather, Plaintiffs object to responding to the same discovery requests three or four separate times when a single coordinated response would fully satisfy all Defendants' legitimate needs while complying with Federal Rule 26's proportionality requirements.

The central issue is straightforward: three defendant groups represented by counsel who coordinate on every other aspect of this litigation have served over 2,300 substantially identical discovery requests to ten sexual assault survivor plaintiffs and six of their parents, with approximately 70-80% duplication. This systematic duplication violates Fed.R.Civ.P. 26(b)(1)'s proportionality mandate and Rule 26(b)(2)(C)'s prohibition on unreasonably cumulative and duplicative discovery. Tenth Circuit precedent and Western District of Oklahoma practice require limitation of such abusive discovery tactics.

Moreover, Defendants seek to compel discovery while simultaneously withholding their own responses, including incomplete document productions, missing privilege logs, and deficient insurance disclosures. Mount Saint Mary even withholds information its own counsel has agreed must be forthcoming. Here it suits their purpose to bury the Plaintiffs in discovery so they can't pursue their case when Defendants have already admitted they did not due the right thing by these women when they were students at Mount Saint Mary

3

Catholic High School. Their lawyers continue the abuse via discovery. This inequitable conduct demonstrates the vexatious nature of Defendants' discovery strategy designed to obstruct rather than advance this litigation. The Court should deny the motions.

**STATEMENT OF FACTS**

### A. Chronology of Recent Events

1. April 30, 2025 – Scheduling Conference held before Judge Russell. Court enters Scheduling Order requiring parties to complete private mediation by September 30, 2025. Discovery deadline: June 5, 2026. Trial docket: July 2026 (Dkt. 105).

2. April 30, 2025 – Following conference, defense counsel emails Plaintiffs' counsel requesting agreement on protective order and initial disclosures (*See* <u>Exhibit 1</u>).

3. May 5, 2025 – Defense counsel emails proposing renewed Rule 26(f) conference to discuss coordinated discovery plan and efficient pre-mediation discovery approach (<u>Exhibit 1</u>, at p. 14).

4. May 5-7, 2025 – Parties exchange emails scheduling conference call for May 14, 2025, to discuss protective order and discovery coordination.

5. May 5, 2025 (approximately) – Defendant Sisters of Mercy serves First Set of Discovery Requests on all sixteen Plaintiffs, 747 Discovery Requests served.

6. May 14, 2025 – Conference call held among all counsel.

7. May 28, 2025 – Defense counsel emails Plaintiffs: "can you provide an update on a proposed discovery plan?"

8. May 28, 2025 – Archdiocese serves Initial Disclosures with no document production.

9. May 30, 2025 – Plaintiffs' counsel responds: "We believed after the last call that all parties were amenable to planning for efficient discovery in a pre-mediation phase, with the goal

4

> **Commented [LR1]:** I'd take out footnote. i agreed to it in writing with cc to you. I get it, but i think we lose this point

of limiting discovery to what is needed to mediate the case ... settlement will be more likely if we are able to limit pre-mediation discovery significantly, or perhaps entirely."

10. Early June 2025 – Plaintiffs propose use of Plaintiff Fact Sheets to coordinate discovery and ensure efficient use of resources. Defendants respond positively, stating they "appreciate your offer to consider ... fact sheets." (Exhibit 1, at p. 2).

11. June 2-3, 2025 – Conference call held. Defendants agree to review Plaintiffs' proposed fact sheet. Plaintiffs circulate proposed fact sheet.

12. June 10, 2025 – Plaintiffs' counsel emails all defense counsel following up on protective order, fact sheet proposal, and mediation logistics.

13. June 17, 2025 – Defense counsel emails proposing pre-mediation discovery approach: exchange Rule 26(a)(1) initial disclosures within 7 days of protective order entry, then "circle back on the issue of what, if any, pre-mediation discovery each of us may wish to pursue."

14. June 18, 2025 – Plaintiffs respond agreeing with defendants' pre-mediation discovery proposal. Parties agree to exchange initial disclosures within 7 days of protective order, with all other discovery on hold until after that date.

15. July 3, 2025 – Plaintiffs transmit settlement demand to all defense counsel, having spent significant time complying with their ethical obligations to obtain the Plaintiffs' consent to issue a demand and consensus on the demand to submit.

16. July 6, 2025 – Defense counsel for Mount Saint Mary and Talita DeNegri responds on behalf of all defendants: "Now that we have finally received a demand, I can state that the window of opportunity [to settle amicably] is closed." Defendants reverse course from prior plan, announcing they will proceed with full discovery and depositions beginning in

September and they are no longer agreeable to conduct only pre-mediation discovery. (Exhibit 3). Despite representations beginning on Jully 6, 2025 that they will circulate proposed deposition dates, those dates are not circulated until late November or early December 2025.

17. July 7, 2025 – Sisters of Mercy confirms previously served written discovery requests deemed served as of this date with response date of August 6, 2025 (id.).

18. July 8, 2025 – Plaintiffs serve Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

19. August 1, 2025 – Plaintiff Jane Doe 1 serves First Set of Requests for Production of Documents on MSM.

20. August 6, 2025 – Responses to Sisters of Mercy discovery due. The Parties continue to negotiate response dates and provide rolling responses.

21. August 19, 2025 – MSM and Talita DeNegri serve Initial Disclosures and produce internal McAfee & Taft investigation report (MSM_000001-272) for first time. This report appears incomplete and is a subject of Plaintiffs' own Motion to Compel.

22. August-September 2025 – Plaintiffs work on responding to Sisters of Mercy discovery and produce documents on rolling basis.

23. September 3-4, 2025 – Plaintiffs serve verified responses to Sisters of Mercy's discovery requests.

24. September 4, 2025 – Parties file Joint Motion to Extend Mediation Deadline from September 30 to November 30, 2025, due to scheduling conflicts among parties, counsel, and mediator, after Defendants go back on what was an agreed mediation date.

25. September 30, 2025 – MSM serves written responses to Plaintiff Jane Doe 1's discovery requests.

6

26. Late September 2025 – Mediation scheduled for November 21, 2025, with mediator Kim Kirn—a mediator located in St. Louis and chosen by the Defendants.

27. October 7, 2025 – Last substantive document production from MSM.

28. October 14, 2025 – MSM serves discovery requests on Plaintiffs.

29. October 20, 2025 – Archdiocese serves First Set of Discovery Requests on all sixteen Plaintiffs (exactly 30 days before mediation).   876 Discovery Requests served.

30. October 21, 2025 – MSM and Talita DeNegri serve First Set of Discovery Requests on each of sixteen Plaintiffs: 688 Discovery Requests served.

31. October 21, 2025 –  A total of 2,311 individual discovery requests across four defendants.

32. October 31, 2025 – Sisters of Mercy serves Amended Initial Disclosures, still no document production despite request for the same.

33. November 5, 2025 – Telephone conference between Plaintiffs' counsel (Laura Reasons) and MSM counsel (Mike Perri, Socorro Dooley) discussing discovery issues, incomplete document production, protective order designations, and upcoming mediation.

34. November 11, 2025 – Plaintiffs send letter to MSM counsel documenting November 5, 2025 call and identifying specific deficiencies in MSM's discovery responses: incomplete investigation report, insurance disclosure deficiencies, and attorneys' eyes only designation problems (*see* Exhibit 4).

35. November 20, 2025 – Plaintiffs mail Response to Requests for Admission by the Archdiocese and Mount Saint Mary.

36. November 21, 2025 – Court-ordered mediation held with mediator Kim Kirn in Oklahoma City. No resolution reached.

7

37. November 26, 2025 – MSM counsel emails Plaintiffs post-mediation: "given the failed mediation, and the slim prospects for resolution given the parties differing views of the case, we need to kick discovery into high gear." Requests meet and confer regarding outstanding discovery responses and proposes deposition scheduling.

38. November 28, 2025 – Plaintiffs send separate letter to MSM counsel pursuant to Rule 37 detailing specific deficiencies in MSM's responses to Plaintiffs' discovery.

39. December 2, 2025 – MSM counsel sends follow-up email: "It's approaching a week since my email below and we have yet to receive a response. Please advise."

40. December 4, 2025 – MSM counsel sends escalation email: "Since you apparently have no interest in responding to the request to 'meet and confer', we will note the same in our soon to be filed Motion to Compel. Moreover, since you have failed to respond to our request to block dates for depositions, we will prepare, file, and serve the appropriate deposition notices."

41. December 4, 2025 (late afternoon) – Plaintiffs' counsel (Rachel Bussett) responds explaining family medical emergency (mother hospitalized with cancer complications and father's death) and co-counsel Laura Reasons will reach out about meet and confer.

42. December 5, 2025 – MSM emails detailing discovery complaints: Alleged 6-month delinquency on damages computations; alleged months of delinquency in responding to discovery; claims MSM's requests for admission are now admitted due to late response; rejects assertion that discovery is duplicative, stating "each defendant vetted the other defendants' requests and deleted those deemed duplicative before serving the same.". MSM counsel borders on personal attacks and accuses Plaintiffs of wasting time based on how they chose to present their case at mediation.

8

43. December 5, 2025 – Meet-and-confer call between Archdiocese counsel and Plaintiffs' counsel. Plaintiffs' counsel announces clients find Archdiocese's discovery duplicative of co-defendants' requests and therefore object to responding separately.

44. December 5, 2025 – Meet-and-confer call between MSM counsel and Plaintiffs' counsel regarding delinquent discovery responses, initial disclosure deficiencies, and Plaintiffs' burden/duplication objections.

45. December 5, 2025 – remaining Responses to Request for Admission to Sisters of Mercy served via mail.

46. December 6, 2025 – Plaintiffs send detailed letter (Exhibit 5) to all defense counsel:

    a.  Documents specific word-for-word and substantively identical discovery requests

    b.  Quantifies burden and proportionality problems

    c.  Proposes coordinated solutions

47. December 8, 2025 – Meet-and-confer call between MSM and Plaintiffs' counsel regarding MSM's outstanding discovery and Plaintiffs' proposal for universal/coordinated discovery. Plaintiffs confirm they mailed RFA responses; discuss MSM's anticipated document production; parties reach impasse on certain requests.

48. December 11, 2025 – Meet-and-confer call between MSM and Plaintiffs' counsel (second call on MSM's discovery responses).

49. December 12, 2025 – Plaintiffs' counsel emails MSM summarizing status of meet-and-confer efforts, including discussion of duplicative discovery coordination issue, bifurcation (Plaintiffs oppose), assailant files (impasse reached), and privilege log (requested as soon as possible).

50. December 12, 2025 – Archdiocese produces insurance policy shared with MSM.

51. December 16, 2025 – Meet-and-confer call between MSM and Plaintiffs' counsel (third call). Defense counsel states: still preparing anticipated document production; standing on objections as to certain requests; still haven't reviewed "inappropriate redactions" issue; Archdiocese's insurance production may have resolved insurance policy issue.

52. December 16, 2025 – Plaintiffs' counsel emails MSM summarizing December 16 call and reiterating positions on outstanding issues.

53. December 19, 2025 – Multi-party meet-and-confer call with all defense counsel and Plaintiffs' counsel regarding Plaintiffs' December 6 letter on duplicative discovery and coordination proposals. Defendants collectively state they do not agree to a universal set of discovery and insist all outstanding discovery must be answered "promptly" as served.

54. December 23, 2025 – MSM files Motion to Compel Plaintiffs' Responses to Discovery Requests [Doc. 113]. Archdiocese files Motion to Compel Plaintiffs' Responses to Discovery Requests [Doc. 114].

## B.  The Duplicative Discovery Burden

On May 5, 2025, Defendant Sisters of Mercy served discovery on all sixteen plaintiffs: 266 interrogatories, 303 requests for production, and 174 requests for admission. Plaintiffs worked cooperatively with Sisters of Mercy's counsel and have responded to all Sisters of Mercy discovery requests. On October 20, 2025—exactly one month before Court-ordered mediation—the Archdiocese served discovery on all plaintiffs: 356 interrogatories, 346 requests for production, and 178 requests for admission. The next day, October 21, 2025, MSM and DeNegri served discovery: 328 interrogatories, 294 requests for production, and 66 requests for admission. Total discovery served across three defendant groups: over 2,300 individual requests. Plaintiffs' detailed analysis demonstrates

approximately 70-80% of these requests seek identical or substantially identical information.  Responses would be due the day before, or the day of, mediation.

### C. Examples of Word-for-Word Duplication

Each group of Defendants serves at least 35 identical or substantially identical requests for production and interrogatories and nearly all substantially identical requests for admission which are improper attempts to seek admission of questions of law. Examples include:

**Interrogatory - Identifying Witnesses:**

Sisters of Mercy Interrogatory No. 1 to each of the 16 Plaintiffs: "Please identify each and every person known to you or believed by you to have relevant knowledge of any discoverable facts related to this matter, including but not limited to the facts alleged in Plaintiffs' Second Amended Complaint, Plaintiffs' claimed damages, and the acts or omissions of Sisters of Mercy of which you complain."

Archdiocese Interrogatory No. 2 to each of the 16 Plaintiffs: "State the name, address, and telephone number of each person who has knowledge of facts relevant to the subject matter of this action, including but not limited to the facts alleged in the SAC, your claimed damages, and the acts or omissions of the Archdiocese of which you complain…."

MSM/DeNegri Interrogatory No. 4 to the 10 Student Plaintiffs: "Identify each Family Member and Friend with knowledge of the Incidents alleged in the SAC."

These requests are functionally identical, differing only in the defendant's name.

**Request for Production – Communications (including electronic):**

All three defendants ask every plaintiff for electronic communications between them and the other Plaintiffs regarding the allegations and damages.  *See* MSM/DeNegri Request No. 14 served on each o fhte 10 Student Plaintiffs; Sisters of Mercy Request No. 16 served on each of the 16 Plaintiffs; and Archdiocese Requests No. 14 or 15 served on

each of the 16 Plaintiffs.  These requests accounting for at least 42 substantively identical requests.

## C. Extensive Meet and Confer Efforts

Plaintiffs have engaged in extraordinary good faith efforts to resolve these issues without Court intervention:

- **April-June 2025**: Parties discussed coordinated pre-mediation discovery. Defendants initially expressed interest in fact sheets and limiting discovery.
- **July 6, 2025**: After receiving Plaintiffs' settlement demand, Defendants reversed course, stating "the window of opportunity [to settle amicably] is closed" and announcing full discovery would proceed.
- **November 28, 2025**: Plaintiffs sent formal meet and confer letter addressing duplicative discovery.
- **December 5, 2025**: Counsel held meet and confer calls. Plaintiffs explained the duplication issue and burden on sexual assault survivors.
- **December 6, 2025**: Plaintiffs sent comprehensive letter documenting specific examples of duplication, quantifying burden, and proposing concrete solutions including joint discovery requests and magistrate referral.
- **December 8, 2025**: MSM and Plaintiffs held additional Rule 37 conference.
- **December 19, 2025**: All defense counsel and Plaintiffs' counsel participated in multi-party conference. Defendants collectively refused all coordination proposals and insisted discovery must be answered "promptly" as served.

## D. Plaintiffs Have Not Failed to Respond

Contrary to Defendants' characterization, Plaintiffs have:

1. **Fully responded** to all Sisters of Mercy discovery in accordance with agreed deadlines.
2. **Timely responded** to all Requests for Admission from the Archdiocese and MSM
3. **Produced over 2,300 pages** of documents in rolling productions since August 2025 and not withheld anything on the basis of privilege or relevancy
4. **Objected on proper grounds** to duplicative interrogatories and production requests during meet and confer

12

5. **Proposed reasonable alternatives** that would provide complete information to all defendants while eliminating unnecessary duplication

## E. Defendants' Own Discovery Failures

While demanding Plaintiffs respond to over 2,300 duplicative requests, Defendants have:

- **Failed to Produce Privilege Logs**: Multiple redacted documents without required Rule 26(b)(5) privilege logs
- **Incomplete Insurance Disclosures**: Only produced redacted declaration pages instead of complete policies required by Rule 26(a)(1)(A)(iv), until Archdiocese produced on behalf of MSM and Archdiocese *after* the late November mediation
- **Incomplete Investigation Materials**: Missing sections of McAfee & Taft investigation report despite promises to produce
- **Incomplete Rule 26 Disclosures**: Plaintiffs have requested documents identified and they have not been produced

## LEGAL STANDARD

Federal Rule 26(b)(1) requires discovery be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(2)(C) mandates courts limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." The Tenth Circuit has emphasized that courts possess "broad discretion in all discovery matters" and must actively manage discovery to prevent abuse. *Lone Star Steel Co. v. United Mine Workers of Am.*, 851 F.2d 1239, 1244 (10th Cir. 1988). Courts within this Circuit consistently limit duplicative discovery in multi-defendant cases. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354,

13

359-60 (D. Colo. 2004).    Due to the Defendants' actions, Plaintiffs have contemporaneously filed a Motion for Referral to Magistrate for Discovery Management.

### ARGUMENT AND AUTHORITY

### I. PLAINTIFFS HAVE NOT FAILED TO RESPOND TO DISCOVERY

Defendants mischaracterize Plaintiffs' position. Plaintiffs have not refused discovery; they have objected to the duplicative nature of Defendants' requests and proposed efficient alternatives during extensive meet and confer.  Under Western District of Oklahoma practice, parties must engage in meaningful meet and confer before filing motions to compel. Local Rule 37.1. Plaintiffs satisfied and exceeded this requirement through months of conferral. Plaintiffs responded to the first-served discovery (Sisters of Mercy) and to Requests for Admission from all defendants. Plaintiffs objected during meet and confer to providing the same information three additional times for interrogatories and production requests. This constitutes a proper objection under the Federal Rules, not a failure to respond.

Defendants complain because Plaintiffs mailed their responses to Request for Admission instead of emailing them and claim the lack of an email is "troubling." Troubling is code for they didn't get what they wanted.  Mail remains proper service and is still the standard of service in Oklahoma State Courts which do not have an CM/ECF system. Even in Federal Court, electronic service outside CM/ECF system requires the affirmative agreement of counsel.  Ms. Reasons agreed to electronic service, Ms. Bussett did not, and as a rule does not, agree to electronic service outside the CM/ECF system. Agreement to accept electronic service does not require use of electronic service. Ms.

14

Bussett practices in multiple jurisdictions across the United States with varying electronic service capabilities and requirements. Her firm has a uniform service policy – USPS – it conforms with all jurisdictions for consistency of her practice, not the convenience of these defendants.

Lastly, as stated in her email of December 4, 2025, at the time she was preparing the discovery responses she was balancing significant work and personal obligations. In addition to "ordinary" work and family obligations during the holiday season, she was coordinating the care and treatment of, and traveling to care for, her critically ill mother, attending to the unexpected death of her father, and her ongoing medical treatment related to injuries she sustained when a she and her family were struck by a semi over the summer. Her focus was not the convenience of the Defendants. Nevertheless, USPS delivered the mail with no prejudice to the Defendants. Plaintiffs fulfilled their obligations to respond and continue to do so by seeking a Protective Order and Referral to a Magistrate Judge.

## II. THE DISCOVERY VIOLATES RULE 26(b)(2)(C) AS UNREASONABLY CUMULATIVE AND DUPLICATIVE

Rule 26(b)(2)(C) requires courts limit discovery that is "unreasonably cumulative or duplicative." The duplication here is not incidental—it is systematic and complete. In *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359-60 (D. Colo. 2004), the District of Colorado limited duplicative interrogatories where multiple defendants propounded substantially similar discovery, noting "the Court finds it appropriate to limit the number ... to avoid the expense and burden of responding to duplicative discovery requests." Similarly, in *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) (emphasis added), the

15

court issued a protective order requiring defendants to "**coordinate their efforts** so as to avoid requiring plaintiffs to respond to duplicative discovery." Here, duplication far exceeds these cases.

By Plaintiffs' estimate, approximately 70% of over 2,300 requests seek identical information. Each plaintiff must identify the same witnesses three times, produce the same documents three times, and describe the same damages three times—despite these answers being identical regardless of which defendant asks. Defendants claim they "vetted" requests and "deleted those deemed duplicative." The record proves otherwise. Identical and nearly identical requests appear across all three defendant groups. Additionally, those requests that are not exactly identical are substantively identical and do not support separate requests. All of the same information can be obtained by the Defendants preparing a coordinated standard discovery request to all parties with Plaintiff specific requests where necessary.

To the extent that Defendants argue they have submitted "specific requests" those requests are primarily contention interrogatories that are more appropriately answered at the conclusion of discovery or after depositions. A "court may order that [a contention] interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.". Fed. R. Civ. P. 33(a)(2). Defendants' contention interrogatories are more appropriate at the end, and particularly after Plaintiffs obtain all of the information that Defendants are obligated to produced and have refused to produce. Defendants discovery requests is harassment and revictimization of the young women they

16

admittedly failed to protect. Plaintiffs are separately filing their own Motion to Compel due to Defendants obstructive discovery responses.

### III. THE DISCOVERY FAILS RULE 26(b)(1) PROPORTIONALITY ANALYSIS

The 2015 amendments to Rule 26(b)(1) "restore[d] the proportionality calculation to a more central role in assessing the scope of discovery." *Salazar v. McDonald's Corp.*, 2016 U.S. Dist. LEXIS 14823, at *15 (D. Ill. Feb. 8, 2016). Every proportionality factor weighs against Defendants' duplicative discovery:

**Burden vs. Benefit**: The burden is extraordinary—sexual assault survivors must relive and recount traumatic experiences three separate times in written interrogatory responses while living with PTSD, mood disorders, eating disorders, and autoimmune disorders. The benefit is zero—witness identities, damage calculations, and medical providers do not change based on which defendant asks.

**Parties' Resources**: Individual plaintiffs, survivors of sexual assault, face institutional defendants (including the Roman Catholic Archdiocese, one of the wealthiest entities in the world) with superior resources who enabled their ongoing abuse.

**Less Burdensome Alternatives**: Plaintiffs have demonstrated that identical information can be obtained through coordinated discovery, fact sheets, or master responses. Defendants' refusal to accept these alternatives despite their efficiency demonstrates the discovery violates Rule 26(b)(2)(C).

**Access to Information**: Plaintiffs possess the information Defendants seek. Providing it once gives Defendants complete access. Requiring it three times serves no legitimate purpose.

17

## IV. THE DUPLICATIVE DISCOVERY IS VEXATIOUS AND OBSTRUCTS ACCESS TO JUSTICE

Courts have recognized that discovery abuse occurs when parties use discovery to harass opponents and obstruct case progression. In *Royalty Petroleum Co. v. Arkla, Inc.*, 129 F.R.D. 674 (W.D. Okla. 1990), this Court emphasized that litigation "is not war" but "a quiet, dignified search for the truth," and sanctioned discovery practices that imposed unnecessary burdens through improper purposes including harassment. Defendants conduct is harassment and the pattern is evident when the chronology of events is viewed even through a neutral eye. Defendants have admitted that they did not follow their own policies and procedures. Further, Defendants have in their possession a 272-page report where they have interviewed some 40 different victims, including nearly all of the Plaintiffs, well before litigation or discovery began. In that report there are clear admissions against interest which support Plaintiffs case. Additionally, Defendant MSM has denied Plaintiffs the right to access even though it contains their own statements which they are entitled to see under Fed.R.Civ.Pro. 26(b)(3)(C) and must review to fully respond to discovery. Defendant Talita DeNegri has reportedly made admissions in response to a questions asked by the investigator which refute requests for admissions that Defendants want to argue are admitted and include statements like:

"I asked [Talita] if she ever told (Jane Doe 17) - you have to tell boys no. She admitted to saying that." (This substantiates her disclosure to Talita DeNegri who Plaintiffs contend is a Principal or Agent of all 3 Institutional Defendants.)

"Talita said she never called the police or DHS in any of these cases." (This constitutes an admission of Principal DeNegri's utter failure as a mandatory reporter under Oklahoma law).

18

"I asked Talita if [School Employee] asked her why she didn't call DHS. She admitted she did. She admitted she told him it was because [Jane Doe 1] reported feeling safe so she didn't have to call DHS.**" (**This admits she knew and that she did not report a crime to the police or DHS.)

Defendants have prevented the disclosure of this information to the Plaintiffs by designating it "For Attorney's Eyes Only" and excessively redacting it without a privilege log. This impairs Plaintiffs' ability to respond to their requests.

This is further evidence that Defendants' conduct demonstrates vexatious intent:

**Timing**: The Archdiocese and MSM served over 1,000 additional discovery requests exactly one month before Court-ordered mediation, despite months of prior discussion about limiting pre-mediation discovery.  It was timed to be a gotcha tactic eliciting Plaintiffs not to respond.

**Reversal After Demand**: Defendants initially expressed interest in coordinated discovery, then reversed course immediately after receiving Plaintiffs' settlement demand, stating "the window of opportunity [to settle amicably] is closed.". Despite this shocking admission that they would not approach settlement in good faith, the Defendants purported to attend in good faith, only to have their behavior demonstrate otherwise on the day of mediation and following.

**Refusal to Coordinate**: Despite coordinating on joint status reports, unified motion briefing, joint extension requests, and shared mediation participation, Defendants refuse to coordinate on the one aspect that burdens Plaintiffs—discovery.

**Obstruction of Plaintiffs' Case**: The discovery burden is so overwhelming that Plaintiffs' counsel has spent over 300 hours reviewing documents and preparing responses

19

to duplicative requests, preventing them from developing their own case. This is precisely the type of obstruction courts must prevent.

## V. DEFENDANTS' OWN DISCOVERY FAILURES DEMONSTRATE BAD FAITH

Courts may consider a party's own discovery failures when evaluating motions to compel. "A court may ... deny a party discovery when that party has failed to comply with discovery obligations." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007).  In *Daval Steel Prods. v. M.V. Jayakrishna*, 106 F.R.D. 137, 139 (S.D.N.Y. 1985), the court held: "The Court will not permit defendants to press the plaintiffs for extensive discovery while defendants fail to respond to plaintiffs' reasonable discovery requests."  Here, Defendants demand Plaintiffs provide every electronic communication "of whatsoever kind" while themselves:

- Redacting documents without privilege logs in violation of Rule 26(b)(5)
- Producing only redacted insurance declaration pages instead of complete policies required by Rule 26(a)(1)(A)(iv)
- Promising documents "at a mutually agreeable time and place" but never producing them
- Agreeing with Plaintiffs' positions, but refusing relief

This pattern of demanding maximum burden while providing minimum compliance demonstrates the improper purpose behind Defendants' discovery strategy.

## VI. TENTH CIRCUIT PRECEDENT REQUIRES COORDINATION IN MULTI-DEFENDANT CASES

The Tenth Circuit and district courts within the Circuit have consistently required defendants to coordinate discovery to eliminate duplication.  In *Cache La Poudre Feeds,*

*Ltd. Liab. Co. v. Land O'Lakes, Inc.*, 438 F. Supp. 2d 1288 (D. Colo. 2006), the District of Colorado held courts have discretion to limit discovery that is "overly burdensome" and emphasized balancing "broad discovery permitted under Rule 26(b)(1) against the need to prevent 'excessive or burdensome discovery.'"  In *Cardenas v. Dorel Juvenile Grp., Inc.*, 2009 U.S. Dist. LEXIS 119756, at *8 (D. Colo. Dec. 22, 2009), the court noted: "District courts have broad discretion to limit discovery in order to prevent abuse of the discovery process and to foster the just, speedy, and inexpensive determination of disputes."

Federal courts routinely order coordination in precisely these circumstances. *Vance v. Berry Plastics Corp.*, No. 4:14-cv-00746, 2016 U.S. Dist. LEXIS 131406, at *7-8 (E.D. Ark. Sept. 26, 2016) ("The court will not countenance the practice of defendants serving substantially the same discovery requests ... The proper course is for defendants to coordinate their discovery so that duplicate requests are not served.").  Plaintiffs have attempted to make coordination occur. Defendants have flat refused to do so. This is not cooperative and is evidence of bad faith.

## VII. DEFENDANTS HAVE WAIVED THEIR RIGHT TO COMPEL BY FAILING TO MEANINGFULLY MEET AND CONFER

Local Rule 37.1 and Fed.R.Civ.P. 37(a)(2) require good faith conferral before filing motions to compel. Defendants' December 5 and 8, 2025 calls do not satisfy this requirement where:

1. Defendants used the calls to demand immediate responses, not to discuss resolution;

2. Defendants refused to engage with Plaintiffs' detailed December 6 letter raising concerns and proposing specific solutions; and

21

3. Defendants collectively rejected all coordination proposals on December 19 without offering alternatives.

This is not good faith conferral—it is an ultimatum. Plaintiffs have no objection to responding to appropriate discovery. They do object to the machinations of the Defendants and the gotcha games designed to drown them in repetitive and duplicative requests. Tenth Circuit precedent requires genuine efforts to resolve disputes, not *pro forma* calls designed to check a procedural box.

## VIII. DEFENDANTS REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED

Both Motions to Compel seek attorneys' fees under Fed. R. Civ. P. 37(a)(5), which provides that, "If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  It provides three exceptions, "the court must not order this payment if:  (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."

The court enjoys significant discretion under Rule 37(a)(5) and may even decline to award fees entirely.  *Doe v. Taos Mun. Sch.*, No. 1:20-cv-01041-SCY-JHR, 2024 U.S. Dist. LEXIS 176359, at *4 (D.N.M. Sep. 27, 2024).  Here, of the exceptions provide reason for the Court

22

to deny Defendants' request.  First, as explained herein, Defendants did not meet and confer in good faith.  Rather, they led Plaintiffs to believe for months that they would cooperative in fashioning a discovery plan, Plaintiff fact sheets, etc., then completely reversed course without warning, serving discovery and timing it to be due at the same time as mediation. Then, when Plaintiffs brought their good faith concerns, Defendants outright refused to acknowledge the duplicative nature of their discovery, and refused to meaningfully discuss *any* of Plaintiffs proposals to coordinate discovery.  That is not a "good faith" attempt to obtain the discovery.

Second, Plaintiff's actions are substantially justified for all of the reasons herein. *Maese v. Lamey (In re Lamey)*, Nos. 14-13729 ta7, 15-1030 t, 2015 Bankr. LEXIS 3710, at *12 (Bankr. D.N.M. Oct. 30, 2015) ("A position is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule").

Instead, Plaintiffs are entitled to their own attorneys' fees in responding to Defendants' Motions, pursuant to Fed. R.Civ.Pro. 36(a)(5)(C), as Plaintiffs will explain in a separate Motion for and proffer of their fees, once Defendants' Motions are denied.

## CONCLUSION

Plaintiffs respectfully request this Court:

1. **DENY** Defendants' Motions to Compel as premature and without merit, including their Motion for fees and expenses;

23

2. **ORDER** Defendants to coordinate their discovery and serve only joint, non-duplicative requests, or accept Plaintiffs' comprehensive responses to Sisters of Mercy discovery as satisfying all defendants' substantially identical requests;

3. **LIMIT** the scope of disproportionate requests to reasonable time periods and subject matter;

4. **STAY** any further discovery by Defendants until they comply with their own discovery obligations, including complete document production, privilege logs, compliance with redaction rules, removal of overly restrictive confidentiality designations, and insurance policy disclosures;

5. **REFER** discovery coordination matters to a United States Magistrate Judge as set forth in Plaintiffs' pending Motion for Referral; and

6. **AWARD** Plaintiffs their reasonable attorneys' fees and costs incurred in opposing these motions pursuant to Rule 37(a)(5)(B), as Defendants' motions are substantially unjustified given months of documented meet and confer efforts and Defendants' own discovery failures.

Respectfully submitted,

s/ Rachel Bussett
Rachel Bussett, OBA No. 19769
**BUSSETT LEGAL GROUP PLLC**
P.O. Box 851804
Yukon, Oklahoma 73085
Telephone: (405) 605-8073
rachel@bussettlegal.com

Laura E. Reasons
**REASONS EMPLOYMENT LAW**

24

332 South Michigan Avenue
Suite 121, No. 5391
Chicago, Illinois 60604
Telephone:  (312) 545-9216
laura@reasonsemploymentlaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 15, 2025, the foregoing document was electronically filed using the Court's CM/ECF system, which will cause it to be transmitted to all attorneys of record.

s/ *Rachel Bussett*
Rachel Bussett

25