**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JANE DOE 1, et al., ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **No. CIV-22-992-R** |
| ) | |
| MOUNT SAINT MARY HIGH SCHOOL ) | |
| CORPORATION OF THE STATE OF ) | |
| OKLAHOMA, an Oklahoma corporation; ) | |
| et al., ) | |
| ) | |
| **Defendants** ) | |

## ORDER

This matter is before the Court on a February 24, 2026 order directing Plaintiffs' counsel to show cause as to why they should not be sanctioned for violating Rule 11. Plaintiffs' and Defendants each filed a written response to the show cause order and the Court held a hearing on March 31, 2026. After carefully reviewing the full record, the Court finds as follows.

### *Introduction*

This matter concerns an issue that has unfortunately become all too common: an attorney's violation of her ethical and professional responsibilities via the inclusion of fake or misleading case citations in a legal brief. The proliferation of this issue is the result of

some attorneys misusing new technological tools – specifically generative AI – to prepare legal briefs.[1]

In this Court's opinion, the legal profession's growing reliance on the use of generative AI to prepare legal briefs is profoundly troubling for two reasons. The primary reason is that there is a willingness by some attorneys (too many) to use generative AI to draft briefs without verifying the accuracy of the content, leading to the inclusion of fake cases and misleading arguments. This conduct is a patent violation of an attorney's ethical and professional responsibilities.

The second reason is that the preparation of a persuasive legal brief requires more than just citation to accurate cases – it requires the exercise of sound judgment. An attorney must make a host of reasoned decisions, such as what arguments should be included, how the arguments should be organized, which authority is most pertinent, how conflicting facts should be addressed, what should be culled and what should be emphasized, and so on. The arguments are strengthened, and the writer's judgment is honed, by the writing process itself, i.e. the act of researching, drafting, deliberating, and revising the brief. When *all* of those tasks are outsourced to generative AI, something essential is surely lost, even if an attorney makes a cursory check of the case citations on the back end.

In any event, until instructed otherwise, the Court accepts and follows the Tenth Circuit's pronouncement that "there is nothing inherently problematic with the use of

---

[1] *See Lexos Media IP, LLC v. Overstock.com, Inc.*, No. 22-2324-JAR, 2026 WL 265581, at *12 (D. Kan. Feb. 2, 2026) ("The sheer amount of case law that has erupted over the last few years due to attorneys' reliance on unverified generative AI research, often generating hallucinated legal authority, is staggering.").

GenAI in the practice of law." *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *6 (10th Cir. Feb. 9, 2026). And, as another judge aptly stated, the real issue here "is not about technology. It is about trust." *Mattox v. Prod. Innovations Rsch.*, LLC, 807 F. Supp. 3d 1341, 1343 (E.D. Okla. 2025). As detailed below, attorney Rachel Bussett broke that trust and violated the standards outlined in Federal Rule of Civil Procedure 11.

### *Pertinent Background*

Plaintiffs' filed a response brief [Doc. No. 115] in opposition to two separate motions to compel. The response brief was signed and filed by Plaintiffs' counsel, Rachel Bussett.[2] The response was stricken because the document that was filed included comments and editing notions indicating that it was a draft brief. The response was re-filed [Doc. No. 116] without the notations. Although the response was untimely, Ms. Bussett did not seek leave to file the response or provide any explanation for the delay.

Defendants filed separate reply briefs [Doc. Nos. 121, 122] pointing out that Plaintiffs' response was late, included reference to legal authorities that were either nonexistent or misleading, made inflammatory and inappropriate attacks on defense counsel, and referenced material that was subject to a Protective Order. Defendant MSM's briefing also implied that Plaintiffs' counsel was not being forthright about when they

---

[2] This case has already been pending for over three years. At various points, other attorneys have appeared and then withdrawn as counsel for Plaintiffs. However, Ms. Bussett initiated this case on Plaintiffs' behalf and has represented Plaintiffs throughout the case. In addition to Ms. Bussett, Plaintiffs are also currently represented by Laura Reasons. Because Ms. Bussett prepared the filings at issue, the Court does not find that Rule 11 sanctions should be imposed on Ms. Reasons. Plaintiffs are also currently represented by Mbilike Mwafulirwa. Mr. Mwafulirwa entered his appearance after the Court issued the show cause order and was retained to provide additional support and oversight. Accordingly, nothing in this order is directed toward Mr. Mwafulirwa.

mailed their responses to Defendant MSM's requests for admission. Defendant MSM explained that, even though counsel had previously agreed to electronic service of all documents and had sent multiple emails about the status of the responses, Ms. Bussett opted to mail Plaintiffs' responses to Defendant MSM's Requests for Admission. The mailing raised concern because the responses arrived over two weeks past the deadline and over two weeks from the date they were purportedly mailed according to the Certificate of Service.

Plaintiffs then filed a Motion for Leave [Doc. No. 128][3] seeking permission to file their response brief out of time and to substitute the response brief with an amended response. The motion was signed and filed by Ms. Bussett. The motion deflected responsibility for the briefing errors, offered an absurd explanation for the inclusion of fake cases, and included numerous statements that proved to be false, including that Plaintiffs' counsel "personally reviewed the authorities cited in the brief," "the cases cited were real published decisions, not fabricated or AI-generated," and the errors relate to quotation "formatting and confirmation." To put it plainly, Ms. Bussett included fake citations in a brief and when she got caught, she tried to cover it up.

This conduct is not an isolated occurrence. In another action pending before the undersigned, Ms. Bussett submitted a response brief that included nonexistent and misleading case citations. *See Crist v. West*, CIV-25-1446-R (W.D. Okla.), Doc. No. 16.

---

[3] The Court struck Plaintiffs' initial motion [Doc. No. 125] because it included an exhibit disclosing the names of certain Plaintiffs, even though they are proceeding pseudonymously.

Although she eventually alerted defense counsel to the citation errors, she did not notify the Court or seek to withdraw the brief.

In this action, after reviewing the parties briefing and performing its own independent evaluation of the cited authority, the Court issued an order directing Plaintiffs' counsel to appear for a show cause hearing. The Court specifically cautioned Plaintiffs' counsel that it was considering whether sanctions under Rule 11(b) were warranted. Prior to the hearing, Ms. Bussett filed a response to the show cause order [Doc. No. 148] and Defendants filed a response [Doc. Nos. 149, 150] to Plaintiffs' motion seeking leave to file an amended brief.[4]

The hearing was held on March 31, 2026, at which the Court received statements and argument from Ms. Bussett, her co-counsel, and defense counsel. Ms. Bussett also filed a supplementary written response [Doc. No. 176]. The Court took the matter under advisement and now issues its ruling.

### *Discussion*

Fed. R. Civ. P. 11(b) states that, by presenting a written motion or paper to the Court, an attorney is certifying that, to the best of her knowledge and formed after a reasonable inquiry,

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[4] A more detailed outline of the erroneous citations contained in Plaintiffs' original response brief is contained in the appendix [Doc. No. 150] submitted by Defendants.

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). This "rule is not aspirational; it is the minimal standard of honesty that keeps the adversarial process tethered to reality." *Mattox*, 807 F. Supp. 3d at 1346–47 (E.D. Okla. 2025). And notably, "an attorney violates Rule 11 even when that attorney does not subjectively intend to deceive the court." *Lexos Media*, 2026 WL 265581, at *10. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

In this action, Ms. Bussett signed and presented a response brief that contained case citations to nonexistent authority, inaccurate quotations, and case citations that do not stand for the proposition indicated. Ms. Bussett then submitted a motion that includes inaccurate or misleading statements about the circumstances surrounding her actions.

In her written response to the show cause order and at the show cause hearing, Ms. Bussett acknowledged that she used AI tools without performing the essential step of personally reviewing the cited authority. She apologized for her conduct and expressed remorse. However, for several reasons, the Court is left with the impression that Ms. Bussett is not being completely candid about how the errors occurred.

6

To start, Ms. Bussett has not adequately explained why the requests for admission have a significant discrepancy between the date they were received and the date they were purportedly mailed. In a normal case, this might be chalked up to a misunderstanding or an unusual delay in the mail delivery. But given the pattern of misleading conduct that has occurred in this case, defense counsel's skepticism about whether the certificate of service contains the accurate mailing date appears entirely warranted.

Second, the Court does not agree that Plaintiffs' counsel "immediately owned up to their mistake when it was brought to their attention." *See* Doc. No. 148 at p. 8. On the contrary, after defense counsel pointed out the citation errors in their briefs, Ms. Bussett filed a motion that contained false and misleading statements about the circumstances surrounding the citation errors. And at the show cause hearing, Ms. Bussett vacillated between admitting that the cases were "clearly wrong" and continuing to profess that she believed she "did everything correctly" or "thought [she] had done the right things." Hr'g Tr. [Doc. No. 164] at p. 55, 57.

Further, Ms. Bussett continues to assert that the errors were due, at least in part, to a misunderstanding in how to use new technological tools and a "tech stack" error that involved mistakenly incorporating part of one brief into another. *Id*. at p. 2, 5; *see also* Hr'g Tr. at p. 30-32. The Court is frankly at a loss to understand how using portions of one brief to help prepare another brief results in the inclusion of fake cases. This explanation is rendered even less plausible by the fact that the same misconduct occurred in another completely unrelated proceeding pending before the undersigned.

Additionally, some of Ms. Bussett's statements at the show cause hearing seemed to downplay or obfuscate what actually occurred. For example, when the Court pointed out that the brief included cases that simply do not exist, Ms. Bussett responded that they do not exist "as written" or they do not exist "as the way they're written." Hr'g Tr. at p. 30, 32. The Court does not know what she means by this. She also implied that the errors were a matter of citations "get[ting] messed up" and that the she misunderstood what constituted a fabricated/hallucinated case and a real case. Hr'g Tr. at p. 30, 33. This is not a matter of a stray error in a case citation or a couple of misattributed quotations. As to Ms. Bussett's suggestion that the errors were at least partly the result of using AI tools that she did not fully understand, "a reasonably competent attorney filing documents in court should be aware of the pronounced, well-publicized risks of using unverified generative AI for legal research and the ethical obligations associated with signing a court filing without checking it for accuracy." *Lexos Media*, 2026 WL 265581, at *13.

Ms. Bussett also explains that at the time of the misconduct, she was experiencing serious personal circumstances that hindered her ability to perform as she should have. The Court is not unsympathetic to those difficulties and bears them in mind as a mitigating factor.

The Court finds that Ms. Bussett's conduct – specifically the inclusion of fake authority and misleading statements in two separate briefs in this case – violates Rule 11(b)(2) and (b)(3). *See Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) ("[U]sing a fake opinion to support an argument is a violation of Rule 11(b)(2)."); *Mattox*, 807 F. Supp. 3d at 1347 (attorney that cited fake cases and then falsely described the errors

8

as formatting errors "violated Rule 11(b)(2) and (b)(3) by presenting legal contentions not warranted by existing law and factual representations lacking evidentiary support"). Ms. Bussett's conduct also implicates the duty of candor to the Court contained in Rule 3.3 of the Oklahoma Rules of Professional Conduct.

Having determined that Ms. Bussett violated Rule 11(b), the Court turns to the issue of sanctions. "Rule 11 sanctions are meant to serve several purposes, including (1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse, and (4) streamlining court dockets and facilitating case management." *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990). However, the "primary goal" is deterrence. *Id.* "The appropriate sanction should be the least severe sanction adequate to deter and punish the plaintiff." *Id.* at 684.

The Court has reviewed numerous cases where attorneys were sanctioned for similar misconduct. Other courts have imposed monetary sanctions, revoked pro hac vice status, referred attorneys to the appropriate disciplinary body, ordered specific CLE attendance, ordered attorney's fees to be paid to opposing counsel, and/or issued a public reprimand. *See Mattox*, 807 F. Supp. 3d 1341, 1349-50 (collecting cases). The Court is mindful that the primary goal of Rule 11 sanctions is deterrence, and the sanction should be the least severe to achieve that goal. With those principles in mind, the Court finds that the following sanctions are appropriate: The Court publicly reprimands Ms. Bussett for her conduct in this case, orders her to notify her clients in this case of this incident, and orders her to self-report this incident to the state bar disciplinary authority where she is licensed to practice. The Court would also, as many other courts have done, be inclined to assess a monetary

sanction. However, in this case, the offending conduct occurred in conjunction with a discovery motion and the Court has already determined that attorneys' fees will be awarded for those discovery failures. The Court has also assessed a monetary sanction against Ms. Bussett in the *Crist* action. Additional monetary sanctions are unnecessary to achieve the goals of Rule 11.

The Court also notes that this issue has caused significant delay and subsumed significant judicial resources (to say nothing of the time and expense of opposing counsel) in a case that has already been plagued by several delays. The Court recently entered a second revised Scheduling Order [Doc. No. 154] and expects counsel to make every effort to comply with those deadlines. Additionally, the Court admonishes Plaintiffs' counsel that it expects compliance with the Protective Order [Doc. No. 109] that was entered in this case. If Plaintiffs' counsel wishes to challenge the confidential designation of certain material, the Protective Order sets out the procedure for doing so. Including an excerpt of a document that was marked as confidential and subject to attorneys' eyes only in a public filing is a violation of the Protective Order.

Accordingly, the Court finds that Ms. Bussett violated Rule 11(b) and issues sanctions as follows: (1) This order will stand as a public reprimand of Ms. Bussett's conduct in this case; (2) within fourteen days of the date of this order, Ms. Bussett shall provide a copy of this order to each of her clients in this case and file a notice certifying that she has complied with this requirement; and (3) within fourteen days of the date of this order, Ms. Bussett shall self-report this incident, and provide a copy of this order, to the state bar authority where she is licensed to practice.

IT IS SO ORDERED this 13th day of May, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE